# **EXHIBIT 7**

## DECLARATION OF MEREDYTH YOON, ESQ.

I, Meredyth Yoon, Esq., hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am the lead attorney for the Southern Poverty Law Center's Southeast Immigrant Freedom Initiative ("SIFI") in Folkston, Georgia. I represent individuals in removal proceedings before the Executive Office for Immigration Review ("EOIR") who are detained at the Folkston ICE Processing Center ("Folkston") in Folkston, GA. The Atlanta Immigration Court has jurisdiction over custody and removal proceedings of respondents who are detained at Folkston.

3. Although I am attempting to limit my visits to the detention center due to the ongoing COVID-19 pandemic, I went to Folkston on Monday, March 16, 2020, and Wednesday, March 25, 2020.

4. On March 16, I met with three clients in Folkston to obtain original signatures on EOIR filings and to retrieve documents needed to prepare a parole request for submission to U.S. Immigration and Customs Enforcement ("ICE").

1

5. On March 25, I had two bond hearings at the Atlanta Immigration Court on Ted Turner Drive via video teleconference ("VTC") from Folkston. The Atlanta Immigration Court recently issued a standing order permitting attorneys to appear telephonically in detained cases. However, the order states that by appearing by telephone, rather than in-person or by VTC with a client, an attorney waives the right to object to evidence filed at the hearing on the basis that they are unable to examine the document. I did not believe it was in my clients' best interests for me to waive that objection.

6. Folkston is divided into two buildings, "Main" and "the Annex." On March 16, I visited one client in the Annex and two clients in Main. On March 25, I attended bond hearings for two clients in Main. There are spaces in both Main and the Annex where respondents appear via VTC in the Atlanta Immigration Court. These spaces are also used for legal visitation.

7. When I visited my clients in Folkston on March 16, I was asked to fill out and sign a five-question form at the front entry about whether, in the past 14 days, I had experienced symptoms of COVID-19; traveled outside the U.S., to China specifically, or to another area affected by the COVID-19 virus; had contact with anyone infected with COVID-19, or had contact with anyone who had traveled outside of the U.S. within the past 14 days. I provided the names of clients I was

visiting and my phone number. I was told I could enter for legal visitation so long as the answer to each of the questions was "no," and that if the answer to any of the questions was "yes," the warden would need to review the request and grant specific permission for the legal visitation. A detention center employee took my temperature with a forehead scanner. I was permitted, but not required, to bring disposable gloves and sanitizing wipes into the detention center.

8. When I went to the detention center on March 25, I was given a shorter questionnaire that contained only two questions: whether I was experiencing fever or chills, and whether I had had direct contact with anyone diagnosed with COVID-19. A detention center employee asked me the two questions verbally and filled out the form in my presence. I believe the form may have been intended for detention center employees, because the space for a name was labeled "employee name." I was permitted, but not required, to bring disposable gloves and sanitizing wipes into the detention center. I was not permitted to bring in a bottle of hand sanitizer because it contained alcohol.

9. On both March 16 and March 25, I saw that some detention center employees were wearing gloves. None of the detention center employees were wearing masks, although I noticed that some had a mask near them.

10. The court/legal visitation space in Main is located off a secured hallway behind the front entry. The space consists of an open central area, which contains a waiting area, as well as three individual closed rooms, which are used for private legal visitation and VTC court appearances. Two small individual closed rooms sit on one side and the third, larger individual closed room is on the other side. The legal visitation space also contains two adjacent cubicles for VTC legal visitation and in-person or phone legal visitation, as well as storage for stackable chairs and tables.

11. When court is in session in Main, respondents who are on the docket wait in the open central area until they are called by their judge through the detention center court officer. There are often multiple judges running VTC court simultaneously, so multiple individual closed rooms may be in use for VTC court at the same time. Legal visitations may also occur at the same time as court.

12. Because multiple judges are often holding VTC court at Folkston at the same time, it is normal for many respondents to be in the court/legal visitation area during court. On March 25, I observed about 50-60 respondents in the open central area waiting for their court hearings. About half were seated on one side of the room, and the other half were seated on the other side. All were sitting within inches of many other respondents, except for two respondents wearing orange, who

were sitting away from the others within inches of each other. Based on my experience representing individuals at Folkston and visiting clients there on a regular basis for more than two years, this was nothing out of the ordinary.

13. Both of my bond hearings on March 25 were before the same judge, and VTC to his courtroom was set up in one of the two smaller individual rooms. In the smaller rooms, there is just enough space for two people to sit next to each other facing the VTC camera.

14. Before the bond hearings on March 25, I asked each of my clients whether they were able to maintain six feet of distance from other residents and whether they had resources to exercise hygienic and other precautions. One client stated he was housed in a cell with seven other people, which adjoined to a common area where up to 60 people congregate at once on a regular basis. The other stated his bunk was in a dorm with approximately 32 people sleeping in the same room and sharing three sinks. Both clients stated that detainees are still the ones cleaning the facility and that maintaining enough distance from others throughout the day and night is not possible.

15. Throughout the time I have represented individuals in Folkston, I have heard complaints about the quality of medical care at the facility. Residents report waiting up to eight days to see a doctor after requesting a medical appointment,

5

receiving substandard care, and having their medical concerns dismissed or ridiculed by medical staff as "dramatic." Residents with serious medical conditions have gotten sicker because meals provided by the detention center do not comply with their medical dietary needs. I have heard reports of detention center staff creating records that residents refused their medication when, in fact, the medication was not distributed. I have heard about stacks of unfulfilled medical requests being found in the trash.

16. I am aware of at least two incidents where a resident who was exhibiting obvious signs of severe medical distress was ignored by detention center staff until other residents essentially staged a protest, as well as other medical emergencies that were not adequately addressed. In 2018, an individual who was experiencing excruciating abdominal pain was not immediately taken to an emergency room despite multiple urgent requests from the resident and his attorney. Detention center employees assured the resident and his attorney that he was fine. The man's appendix later ruptured.

17. Since January of 2018, there have been multiple outbreaks of communicable disease within Folkston, including chickenpox and other potentially serious illnesses. One individual detained at Folkston shared with me that he tested positive for tuberculosis ("TB") after he was assigned to a cell with a roommate

exhibiting visible symptoms of an active TB infection. The roommate was subsequently confirmed to have TB.

18. On March 26, 2020, I spoke with a client who was transferred earlier this year from Folkston to Stewart Detention Center ("Stewart"), a private ICE detention center in Lumpkin, Georgia. My client has several serious medical conditions, including hypertension, diabetes, respiratory difficulties, and other issues. Based on his medical conditions, I submitted a humanitarian parole request on his behalf to ICE in August of 2019. On March 18, 2020, ICE reported that the parole request was still pending.

19. When I spoke to my client on March 26, he told me his housing unit at Stewart was placed under quarantine after one of the guards fell ill, and that other guards were not coming to work due to reports of COVID-19 in the facility. A detainee had been removed from his unit after feeling sick for several days and coughing blood. My client was terrified because ICE officers came to the facility wearing masks and gloves, but guards were continuing to work without personal protection equipment ("PPE"). Because of his respiratory difficulties, my client was given a disposable mask; however, other detainees in his unit did not receive masks or gloves. At the time of our conversation, my client had been using the same disposable mask for approximately five days.

20. My client expressed he was afraid of getting sick because his CPAP machine, which aids in his breathing at night, sits next to his bed near other detainees. When he expressed these concerns to an ICE official, the officer told him not to worry because the virus would not get inside.

21. On March 31, 2020, the Atlanta Journal Constitution reported that a Stewart employee had tested positive for COVID-19.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of April, 2020, in Baxley, Georgia.

Meredyth Yoon, Esq.

8