# **EXHIBIT 17**

## **DECLARATION OF ARISTOTELES SANCHEZ MARTINEZ**

I, Aristoteles Sanchez Martinez, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am at least 18 years of age and am competent to sign this declaration. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am 47 years old and a citizen of Venezuela. I have been in ICE custody since approximately September 2018. I was transferred to Stewart Detention Center ("Stewart") in Lumpkin, Georgia, on March 23, 2020, from the Houston Contract Detention Facility ("HCDF") in Houston, Texas. I had been at HCDF since about January 10, 2020. Before HCDF, I was at Stewart. Previously, I was at Folkston ICE Processing Center in Folkston, Georgia.

3. I received a removal order in June 2019. My BIA appeal was denied in November 2019. It is unlikely that I can be removed to Venezuela within a reasonable time, not only due to the COVID-19 crisis but also because Venezuela is not currently accepting any deportees, to my knowledge.

4. I have several medical conditions that make me vulnerable to COVID-19. I have Type II diabetes and hypertension, which both put me at a higher risk for contracting COVID-19. Since I have been in ICE custody, my hemoglobin

1

A1C levels and sugar levels have been dangerously high, at times at 9.7 and 345, respectively.

5. I am recovering from a hernia repair surgery that occurred on or around March 11, 2020. The surgeon removed a large right flank hernia on my abdomen, which had grown substantially since being in ICE custody. Despite instructions from a surgeon that I would have to remain in intensive care after the surgery, I was brought back to the ICE facility within one day of the surgery. I am still experiencing pain, weakness, and inflammation from the surgery. I also have neuropathy, a bone spur on my left foot, Charcot foot, avascular necrosis, non-palpable pulses in lower extremities, and venous insufficiency. I am currently in a wheelchair due to my conditions. I worry that each of these conditions puts me at a higher risk for contracting COVID-19.

6. While I was detained at HCDF, no member of the medical staff evaluated my conditions or well-being to determine whether any additional precautionary measures were necessary to protect me from COVID-19.

7. I did not receive any formal education about COVID-19 from any ICE officers or HCDF officers. I learned about COVID-19 prevention and detection mostly from my teenage daughter and the news. Because of the lack of information provided to us, I did not know how widespread and dangerous this virus has

become. Until recently, I had thought that within the United States, the disease existed only in New York City and in Miami.

8. To my understanding and knowledge, there were no changes in HCDF's protocols or procedures in light of COVID-19. To my knowledge, there was no increase in cleaning supplies since the outbreak of COVID-19 necessary to follow the hand-washing techniques. We were not provided with additional cleaning supplies or extra soap. Hand sanitizer was recently placed outside of my unit but was only available when I exited to go to medical. Individuals with work assignments that involve cleaning were not given additional cleaning supplies or provided additional protection. They continued to mop and sweep the units without wearing gloves or other protective equipment. I did not see any officers wearing gloves or masks. I did not witness any changes in the medical staff at HCDF in light of COVID-19, such as increased staffing.

9. Concerning educational materials, I had seen only two flyers in my dorm about COVID-19. The information was only available in English and Spanish. The first flyer provided advice on washing our hands for at least twenty seconds. The second flyer was about staying away from people who exhibit symptoms of the virus, but it did not say what those symptoms are.

10. Social distancing was not possible at HCDF. I slept in an "open dorm," where there are many other detainees in adjacent bunk beds. In total, there were about 40 detainees in my dorm. The distance between the bunk beds was approximately four feet, just enough to fit my wheelchair.

11. Last week, a number of detainees were transferred into HCDF from an ICE facility in Otay Mesa. This added to my fear of contracting COVID-19.

12. Despite my vulnerabilities to COVID-19, I was placed in a van to be transferred back to Stewart Detention Facility on or about Sunday, March 22, 2020. I was not given any reason for my transfer.

13. My hands and feet were shackled. I was not provided with any protective gear, such as gloves or a surgical mask, cleaning products, or hand sanitizer. I did not see the officers wiping down the seats of the van with any disinfectant. I was not provided with my prescribed pain medication. Because of my recent surgery, the shackles, and not having access to my wheelchair, I was in so much pain during the trip.

14. On our way to Stewart, we made a stop at an ICE facility in Louisiana, where I used the bathroom. The bathroom did not have soap, so I had to wash my hands with water. From there, I was placed on a bus and handcuffed.

15. When I arrived at Stewart, I went through intake with approximately fifty other new transfers. From my understanding, the new transfers were arriving

from different detention facilities in the country. While we were waiting for our cursory screening, we had very little space to move around and practice social distancing.

16. Many of the new transfers were ultimately placed in the same housing unit as me. I am very nervous that I was exposed to COVID-19 since people were transferred from many facilities, and we were not properly screened by medical staff.

17. Since I have returned to Stewart, no member of the medical staff has evaluated my medical vulnerabilities to determine whether any additional precautionary measures are necessary to protect me from COVID-19. Nor have they asked me about any potential symptoms or possible exposure to COVID-19.

18. I was transferred back to Stewart without my prescribed pain medication. To this day, I have only been given Tylenol 500mg to treat my pain.

19. Up until early this week, I was living in a dorm unit with approximately eighty (80) other men. I shared a cell with another detainee. We were regularly in close proximity to each other and did not have the ability to exercise any social distancing.

20. On Tuesday, March 31st, 2020, at around 11am, I was transferred to a separate dorm unit at Stewart by guards who indicated I was being moved because I

was considered a person at a high risk of contracting COVID-19. In this unit, I am now living in a dorm with approximately twenty (20) other men. I was assigned a cell without any roommates. All food and required medications are being transported to our dorm unit directly for our safety and to avoid minimum contact with people in the outside.

21. I am currently in a wheelchair. The initial wheelchair that I was given made social distancing impossible because I could not push myself. I was fully dependent on others to get around.

22. My previous and new dorm units are cleaned by other detainees twice per day. Since the COVID-19 crisis started, ICE has not made any changes to the cleaning schedule for our dorm. Nor have we been provided with additional cleaning supplies to keep our dorm disinfected and sufficiently clean.

23. ICE continues to maintain the same schedule for distribution of personal hygiene supplies. Every Thursday, we receive one toilet paper roll, batteries, one small bar of body soap (for washing hands and showering), one bottle of body lotion, and one tube of toothpaste. If we run out of these provisions before the end of the week, the only option is to buy additional supplies at the commissary.

24. There are two other dorm units at Stewart that are currently in lockdown right now, but ICE refuses to confirm whether this is due to a medical quarantine

situation. Despite the current public health crisis, Stewart continues to admit new detainees. As recently as Friday March 27, 2020, several detainees arrived from other detention centers in the northeast, including one in Boston. I know this because I saw the writing board that ICE maintains to keep count of all inmates while I was meeting with my deportation officer in the intake area.

25. Currently, I am in severe pain and very concerned for my health as ICE often fails to check my sugar levels in the morning.

26. I do not know how to identify the symptoms of COVID-19. I am scared for my life.

27. If I am released from detention, I will comply with any applicable conditions of release including attending check-ins and immigration court hearings.

28. Upon release, I will reunite with my family in Queens, NY and will self-quarantine for the time required. I also have the support of a Lutheran Church in Brooklyn, NY.

29. I have worked closely with my attorney to prepare this declaration. I have authorized my attorney to sign on my behalf given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 1st, 2020 at Lake Worth Beach, Florida.

*Victoria Mesa-Estrada*

_____

Victoria Mesa-Estrada, Esq.

on behalf of Aristoteles Sanchez Martinez

## ATTORNEY DECLARATION

I, Victoria Mesa-Estrada, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is Victoria Mesa-Estrada. I am a licensed attorney in good standing in the state of Florida. I am an attorney of record in this litigation.

2. I represent the declarant, Aristoteles Sanchez Martinez. Out of necessity in light of the COVID-19 pandemic, I signed Aristoteles Sanchez Martinez's declaration on his behalf and with his express consent.

3. ICE is oftentimes requiring legal visitors to provide and wear personal protective equipment, including disposable vinyl gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4. There are documented cases of COVID-19 in all fifty U.S. states and most inhabited U.S. territories. The Centers for Disease Control and Protection (CDC) has issued statements warning that individuals are at a higher risk of infection when traveling. In addition, I am a resident of Palm Beach County, Florida and unable to travel to Georgia under a state "stay-at-home" order issued by the Governor of Florida Ron DeSantis on April 1st, 2020.

5. In light of the above, to protect public health, I am not able to travel to the Stewart Detention Center in Lumpkin, Georgia, to obtain my client's signature.

6. I spoke with Aristoteles Sanchez Martinez via phone call, read the declaration to him, and confirmed the accuracy of the information therein. Aristoteles Sanchez Martinez has confirmed the accuracy of the information therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 1ˢᵗ, 2020 at Lake Worth Beach, Florida.

*Victoria Mesa-Estrada*

_____

Victoria Mesa-Estrada, Esq.

Attorney for Plaintiffs

Southern Poverty Law Center

T. 786.216.9168

victoria.mesa@splcenter.org