# **EXHIBIT 18**

## **DECLARATION OF MICHAEL ROBINSON**

I, Michael Robinson, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am at least 18 years of age and am competent to sign this declaration. I make this declaration based on my personal knowledge except where I have stated otherwise.  If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am 54 years old, and I am from Jamaica.

3. I am currently detained at Stewart Detention Center in Lumpkin, Georgia. I have been detained here since on or around February 14, 2020.

4. I am seeking Asylum, Withholding of Removal, and protection under the Convention Against Torture, due to persecution I experienced as a bisexual man. I have 6 U.S. citizen children.

5. I suffer from hypertension, asthma, cardiac murmur, high blood pressure, and benign prostatic hyperplasia (BPH). My asthma and heart conditions leave me susceptible to complications if I were to be exposed to COVID-19. The virus is known to attack the lungs, and mine are weakened by my asthma. Additionally, my heart is not functioning as well as it should be, leaving me more prone to larger heart issues if it is strained from this virus. I fear the virus would be fatal for me due to my already weakened health.

6. I have had five or six different cellmates since I arrived at Stewart Detention Center. Until recently, I was detained with another person in a cell, which is very small. We shared a bathroom and everything else within the room. I slept on the bottom bunk, and my bunkmates slept on the top.

7. The cells are small and the bunk beds have the mattresses close to one another. It is not possible to stay six feet away from cellmates.

8. When new detained men were placed into my room, they were put there without having been tested to confirm they do not have COVID-19. Only one of my cellmates said he was quarantined for a couple of days before he was put in my cell. Most of them said that they had not been quarantined.

9. I am very concerned because one of my cellmates had a cough and was sick. He put in a request to see a doctor, but they said he wasn't a priority so he didn't see a doctor. He was not isolated from the rest of us.

10. The detention center is set up so that detainees are close to each other when we eat. We eat together in close quarters, where there are tables with chairs secured to the floor. It is not possible to move the seating. As a result, we are forced to eat near one another.

11. In general, the pods are crowded, making it not possible to maintain six feet of distance from other people. More people keep coming into the detention center.

12. As of a couple of days ago, I was placed into what they are calling a quarantine pod because I am at high risk of being affected severely by the virus. I think there are about 20 other people in quarantine also. They moved all of the high-risk people into a single pod. I have my own cell, but I have my meals with the other people who are being quarantined. We also use the same showers, which are not regularly cleaned.

13. We have one dispenser that I think is hand sanitizer available in the common area of the pod, but we run out of it often. We have our own soap and we are expected to make it last until it is distributed again, like once a week. I often use less soap than I need because I am worried about running out. We also have to use this soap to wash our dishes that we get to each commissary food.

14. While I have money in my commissary account, there are no masks, gloves, or hand sanitizer available for purchase. Detainees have been asking for masks for weeks, but there is nothing available.

15. The officers who run the detention center have not trained me or the other detainees on how to try and limit the spread of COVID-19.

16. I understand that staff at Stewart Detention Center have been confirmed to have COVID-19. I also heard that a detainee has the virus. I tried asking who they knew had COVID-19, but they wouldn't tell me. I do not know if I have already been exposed to COVID-19.

17. Until very recently, I have not seen officers wearing masks or gloves. Detainees have not been provided masks or gloves. I heard a nurse saying that they have to reuse masks and that they are running out of supplies.

18. I have not witnessed officers washing their hands, and they sometimes do not wear gloves.

19. Officers routinely touch meal trays and other items in the living and eating areas of the detention centers. They also touch detainees when they cuff them or use force against them.

20. Yesterday, we had a recent incident after the guards used pepper spray on a detainee and the spray affected a bunch of us. It was very scary for me because I could not breathe, and I was coughing so much that I coughed blood. They used so much pepper spray that it came through two doors. Three people in my unit had to go to the medical unit.

21. I have not been tested for COVID-19, and I am not aware of anyone else in detention having been tested.

22. I know that there are other people who have chronic illnesses who are high risk for COVID-19 complications, but they have not been put in the quarantine pod.

23. I am particularly worried about my own health because my medical condition has worsened since entering ICE custody. A couple of weeks ago, my EKG

was so abnormal that the doctors at Stewart Detention Center were concerned enough to send me to the hospital, where I remained overnight for observation. As a result, my medications for my heart, kidneys, and blood pressure were changed because they were not sufficiently working to treat my underlying health problems. Since starting the medications, I have experienced severe side effects such as constant headaches, numbness in my mouth, and uncontrollable shaking.

24. After returning from the hospital, Dr. Brown told me she put in a request for me to go to a cardiologist concerning my heart, because the left side of my heart is swollen. This is why my EKG is still abnormal.

25. I have asked the medical staff at Stewart Detention Center to provide me with my medical records twice since my hospitalization, but I still have not received them. Since the medical staff have not been responsive to me before the COVID-19 threat, it is likely that they lack the capacity to handle COVID-19 cases at Stewart.

26. If I am released from detention, I will comply with any applicable conditions of release including attending check-ins and immigration court hearings.

27. I am also submitting with ICE, through my attorney, a Request for Humanitarian Release based on my medical issues.

28. If released, I would live with my family in Florida, my sister in Long Island,

5

New York, or my mother in Brooklyn, New York. In any of these places, I would be able to practice social distancing and self-quarantine.

29. I have authorized my attorney to sign on my behalf given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 2, 2020 at North Bay Village, Florida.



_____

Rebecca Sharpless, on behalf of Michael Robinson

## ATTORNEY DECLARATION

I, Rebecca Sharpless, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is Rebecca Sharples. I am a licensed attorney in good standing in the state of Florida. I am an inactive attorney in good standing in the state of Washington.

2. I represent the declarant, Michael Robinson, in his immigration case in Krome immigration court in Miami, Florida. Out of necessity in light of the COVID-19 pandemic, I signed Michael Robinson's declaration on his behalf and with his express consent.

3. ICE is oftentimes requiring legal visitors to provide and wear personal protective equipment, including disposable vinyl gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4. There are documented cases of COVID-19 in all fifty U.S. states and most inhabited U.S. territories. The Centers for Disease Control and Protection (CDC) has issued statements warning that individuals are at a higher risk of infection when traveling. In addition, I am a resident of Miami-Dade County,

Florida and unable to travel to Georgia under a state 'Stay at home' order issued by the Governor of Florida Ron DeSantis on April 1st, 2020.

5. In light of the above, to protect public health, I am not able to travel to the Stewart Detention Center in Lumpkin, Georgia, to obtain my client's signature.

6. I spoke with Michael Robinson via video conferencing, read the declaration to him, and confirmed the accuracy of the information therein. Michael Robinson has confirmed the accuracy of the information therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 2, 2020 at North Bay Village, Florida.



_____

Rebecca Sharpless, on behalf of Michael Robinson

Professor

Immigration Clinic

University of Miami School of Law

1311 Miller Drive, E-256, Coral Gables, FL 33146

8